Craig Bridgeman
1001 West Fulton St.
Canton, MS 39046
601-720-8293
csb120266@yahoo.com
Plaintiff in Pro Per



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
AUG 06 2021
ARTHUR JOHNSTON
BY _____ DEPUTY

**United States District Court**
**For The Southern District of Mississippi**

Craig Bridgeman,   Case No. 3:21-CV-514-HTW-LGI

    Plaintiff,

vs.   COMPLAINT

AT&T; SBC Internet Services, Inc.;
And Sedgwick Claims Management Services, Inc.,

    Defendants,

_____

### Jurisdiction

This court has jurisdiction under 28 U.S.C. 1332 because there is diversity of citizenship and an amount in controversy greater than $75,000.

### Venue

Venue is proper pursuant to 28 U.S.C. 1391 because the events giving rise to this complaint happen in this district.

### PARTIES

1

1. Plaintiff, Craig Bridgeman, is an adult resident citizen of Madison County, Mississippi, maintaining his residence at 1001 West Fulton Street, Canton, Mississippi 39046

2. Defendant, AT&T, Inc. ("AT&T) is a Delaware corporation with its principal place of business at 208 S. Akard, Dallas, Texas 75202

3. Defendant, Sedgwick Claims Management Services, Inc. ("SCMS") is an Illinois corporation with its principal place of business at 8125 Sedgwick Way, Memphis, TN 38125-128

4. Defendant SBC Internet Services, Inc. ("SBC") is a California corporation with a principal place of business at 1010 N. Saint Mary's St., San Antonio, Texas. SBC Internet is a wholly owned subsidiary of AT&T Inc.

## STATEMENT OF FACTS

5. The Plaintiff, an African American male, was an AT&T U-Verse Technician when he suffered an admittedly compensable injury to his right shoulder and elbow on March 27, 2013 while employed at AT&T. As a result of the injury, Plaintiff suffered permanent injury to his right shoulder and right elbow. He treated at the emergency room at St. Dominic's on the date of injury, and then with Dr. Louis Saddler, his family doctor, who ultimately referred him to Dr. William Geissler.

6.     Weekly wage benefits started on April 3, 2013 and was paid with dispute over the period required by law. Defendants refused to pay temporary total disability benefits from August 13, 2013 to September 11, 2013, and January 4, 2014 to March 11, 2014 without arguable reason, which caused Plaintiff unrelenting emotional stress throughout the period of disability.

7.     Defendants refused to pay, or authorized physical therapy treatment recommended by Dr. William Geissler without arguable reason.

8.     Dr. Geissler recommended a surgical procedure to the right shoulder and elbow, and scheduled surgery for January 3, 2014. The Plaintiff, concerned about undergoing the surgery due to a heart condition, contacted Dr. Geissler's office prior to the surgery and spoke to his nurse, Tracy Walls. Nurse Walls suggested that they try physical therapy in lieu of the surgery on January 3, 2014. The referral for physical therapy was sent to the adjuster by Dr. Geissler's office, and the referral for therapy was denied.

9.     Thereafter, the adjuster suspended the indemnity benefits of the Plaintiff, alleging that Plaintiff refused surgery. Notwithstanding the fact that no person can be compelled to undergo a surgical procedure, the Plaintiff did not refuse any medical treatment. Plaintiff was doing exactly as Dr. Geissler and Dr. Geissler's office had suggested and would have been undergoing physical therapy but for the

denial of the physical therapy prescription by the adjuster. Further, Defendants refused to pay temporary total disability benefits from January 4, 2014 to March 11, 2014.

10. After writing letter to adjuster of Defendant, it became of apparent that they would not pay temporary total disability benefits and approve the physical therapy treatment and on January 17, 2014, Plaintiff's counsel filed a Motion to Compel Indemnity and Medical Benefits with the Commission, a copy of which is attached as Exhibit "A".

11. The administrative judge conducted a hearing and later issued an Order dated March 11, 2014 granting Plaintiff's Motion. A copy of the Order is attached as Exhibit "B". Defendants did not appeal this Order.

12. Only after the matter was litigated for several months, Defendants resumed payment of temporary total disability to Plaintiff and approved Dr. Geissler physical therapy referral.

13. For no legitimate or arguable reason and for month after month, Plaintiff suffered through delays in receiving treatment which were authorized by his treating physician and not receiving temporary total disability benefits on time. The problem became so acute and such a stress on the Plaintiff that he sought medical treatment for his stress.

14. The dealings with Defendants were carried out in bad faith without an arguable cause or justification on the belief by Plaintiff that they were trying to use their unequal bargaining position to force him to settle his claim and not pay him weekly benefits and medical expenses.

15. Plaintiff's assets mainly included weekly compensation benefits before benefits was suspended and their deliberate acts were intended to place economic pressure on Plaintiff.

16. Plaintiff has not signed any release or made any settlement with Defendants and continues to receive medical benefits.

17. The stress of dealing with his pain and the provocative bad faith dealing carried out by Defendants resulted in and contributed to the Plaintiff having to obtain medical treatment for his failure to receive authorized treatment and delayed payments of temporary total disability benefits.

## BAD FAITH ACTS IN FAILING TO TIMELY PAY MEDICAL TREATMENT AND INDEMNITY BENEFITS

18. Defendants were contentious on the payment of required medical treatment and indemnity benefits. The treating physician recommended physical therapy to reduce pain of Plaintiff in lieu of surgery. Defendant in bad faith arbitrarily without arguable reason suspended all Plaintiff's benefits after Dr. Geissler referral of physical therapy.

19. Dr. William Geissler, using his professional skills, explored ways to treat the Plaintiff so as to make his unrelenting pain tolerable and authorized physical therapy and Defendants refused to pay for that treatment or any future treatment even though Dr. Geissler's authority was the only one dealing with the subject matter. There were no facts contradicting this form of treatment, but Defendant arbitrarily and in bad faith used their superior financial position to deny this very treatment.

20. Overall and in each aspect of the Plaintiff's claim, Defendants were argumentative, somewhat belligerent, and acted as if the Plaintiff's claim was based on malingering and acted deliberately and intentional to make it difficult for the Plaintiff to receive any and all benefits, such being carried out with no arguable reason.

## COUNT I.
## BAD FAITH FAILURE TO PAY INDEMNITY BENEFITS FROM AUGUST 11, 2013 TO SEPTEMBER 13, 2013

21. Plaintiff adopts by reference all statements made hereinbefore and for cause of action under Count I states as follows:

22. The act in denying the payment of indemnity benefits from August 11, 2013 to September 13, 2013 were arbitrary without arguable reason or justification given

intentionally to harm and damage the Plaintiff and/or to create pressure for settlement purpose. The acts of Defendants were carried out with malice and intent to withhold and deprive the Plaintiff of indemnity benefits.

WHEREFORE, Plaintiff sues for compensatory damages in a sum of $1,000,000.

## COUNT II.

## BAD FAITH FAILURE TO SUPPLY PHYSICAL THERAPY FROM JANUARY 04, 2014 TO MARCH 11, 2014

23. Plaintiff adopts by reference all statements made hereinbefore and for cause of action under Count II states as follows:

24. The physical therapy referral was given to Defendants, who had knowledge that in lieu of surgery, that physical therapy treatment was Dr. William Geissler ultimate choice to treat Plaintiff for pain control to a tolerable level. The act in denying physical therapy treatment were arbitrary without arguable reason or justification given intentionally to harm and damage the Plaintiff and/or to create pressure for settlement purpose. This therapy was authorized by Dr. Geissler and there is no offsetting medical or expert opinion that negate or cancels any good or benefits that may be received from such therapy, therefore, the acts of Defendants

7

were carried out with malice and intent to withhold and deprive the Plaintiff of common, well accepted, medical treatment.

WHEREFORE, Plaintiff sues for compensatory damages in a sum of $1,000,000.

## COUNT III.
## BAD FAITH FAILURE TO PAY INDEMNITY BENEFITS FROM JANUARY 04, 2014 TO MARCH 11, 2014

25. Plaintiff adopts by reference all statements made hereinbefore and for cause of action under Count III states as follows:

26. The act in denying the payment of indemnity from January 04, 2014 to March 11, 2014 were arbitrary without arguable reason or justification given intentionally to harm and damage the Plaintiff and/or to create pressure for settlement purpose. The physical therapy was authorized by Dr. Geissler and there is no offsetting medical or expert opinion that negate or cancels any good or benefits that may be received from such therapy, therefore, the acts of Defendants were carried out with malice and intent to withhold and deprive the Plaintiff of indemnity benefits.

WHEREFORE, Plaintiff sues for compensatory damages in a sum of $1,000,000.

8

## COUNT IV.

## **PUNITIVE DAMAGES**

27.     Plaintiff adopts by reference all statements made hereinbefore and for cause of action to recover Punitive Damages under Count IV alleges the following facts:

28.     Plaintiff charges that he is entitled to recover punitive damages on the multiple acts and course of conduct by Defendants which was manifestly intentional and outrageous. These acts were malicious and intentionally carried out to prevent timely and adequate payment of benefits.

29.     The failure to pay temporary total disability payments was a deliberate and intentional decision by Defendants given without regard for the well fare of the Plaintiff and intentionally brought about to harm Plaintiff.

30.     The failure to provide authorized physical therapy for treatment of the Plaintiff's shoulder and elbow injury was a deliberate and intentional decision by Defendants given without regard for the well fare and/or health of the Plaintiff and intentionally brought about to prevent the Plaintiff from receiving that medical treatment authorized by a medical doctor which treatment was not disputed by any other doctor.

31.     All of the acts set forth in this Complaint were deliberate, intentional and given with malice aforethought by Defendants so as to bring under control a very

expensive injury claim and to force the Plaintiff to remove or to settle it for a lump sum or failing therein to reduce the amount of money paid.

WHEREFORE, Plaintiff sues for punitive damages in a sum of $5,000,000.

Dated: August 6, 2021

Respectfully submitted,

*Craig Bridgeman*

By: *Craig Bridgeman*

Craig Bridgeman
1001 West Fulton St.
Canton, MS 39046
601-720-8293
csb120266@yahoo.com
Plaintiff in Pro Per